UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| DOUGLAS CORNELL JACKSON, #748757, | Case No. 2:21-cv-37 |
| Plaintiff, | Hon. Jane M. Beckering<br>U.S. District Judge |
| v. | |
| THOMAS PERTTU and DAVID PYNNONEN, | |
| Defendants. _____/ | |

**REPORT AND RECOMMENDATION**

**I.     Introduction**

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 40.)

Plaintiff — state prisoner Douglas Cornell Jackson — filed suit under 42 U.S.C. § 1983 on February 26, 2021.  In his verified complaint, Jackson alleged that, while he was confined at Baraga Correctional Facility (AMF) in Baraga, Michigan, Resident Unit Manager (RUM) Thomas Perttu refused to process Jackson's legal mail and retaliated against him by placing him in segregation, and that Sergeant (Sgt.) David Pynnonen conducted a retaliatory cell search.

The Defendants now move for summary judgment, asserting that Jackson did not properly exhaust his administrative remedies with respect to claims against either Defendant. (ECF No. 40.)  According to Defendants, Jackson did not pursue

any grievances involving RUM Perttu or Sgt. Pynnonen and the events described in the complaint through Step III of the grievance process. (*Id.*) In response, Jackson argues that his ability to utilize the grievance process was thwarted, and that the exhaustion requirement should be waived. (ECF No. 42.)

The undersigned respectfully recommends that the Court deny Defendants' motion for summary judgment because a genuine issue of material fact remains as to whether Jackson's access to administrative remedies was thwarted. If the Court accepts this recommendation, all of Jackson's claims will remain. The issue can be resolved in a bench trial or evidentiary hearing. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

## II.     Factual Allegations

During the events of this complaint and until August of 2021, Jackson was an inmate at AMF. (ECF No. 1, PageID.1; ECF No. 30.) He was confined in administrative segregation during these events. (ECF No.1, PageID.1.) Before filing this complaint, Jackson had several cases pending in this court, including at least two others against Sgt. Pynnonen. (*Id.*, PageID.2.)

Jackson says that on January 15, 2021, RUM Perttu refused to receive Jackson's legal mail while making his mail rounds. (*Id.*, PageID.5.) Then, RUM Perttu told Jackson that he was not receiving Jackson's legal mail because Jackson continued to file grievances and lawsuits despite an earlier warning from Sgt. Pynnonen to stop. (*Id.*) A few moments later, RUM Perttu allegedly returned to

Jackson's cell and threatened to place Jackson in a different cell under harsh conditions. (*Id.*) Jackson then told RUM Perttu he would stop filing grievances. (*Id.*)

Jackson asserts that later that day he was moved to the abovementioned cell: Segregation Unit 1 #122. (*Id.*, PageID.6.) Jackson was then subject to 24-hour lighting, flooding from the shower, and no recreation. (*Id.*) Jackson believes this was done in retaliation for filing lawsuits. (*Id.*) Jackson also says that the flooding in cell #122 damaged his legal papers and placed him at risk of injury. (*Id.*) After these events, Jackson was "hog chained" and moved again to Cell #1-117 after protesting non-violently. (*Id.*) Finally, late that night, RUM Perttu returned to Jackson's cell in segregation and told Jackson that for filing a complaint against Sgt. Pynnonen, Jackson would have "additional time in those chains" and "remain in [segregation]" as long as he was imprisoned at AMF. (*Id.*, PageID.6-7.) Jackson argues that the threats and destruction of his legal papers via flooding on January 15, 2021, deterred him from filing grievances and lawsuits. (*Id.*, PageID.7.)

Jackson asserts that on February 8, 2021, more than three weeks after the events involving RUM Perttu, Sgt. Pynnonen supervised a cell search of Jackson's cell. (ECF No. 1, PageID.7.) During this search, Jackson was removed to a different cell to prevent observation of the search. (*Id.*, PageID.8.) Upon returning, Jackson found his legal papers in disarray. (*Id.*) Later, Sgt. Pynnonen returned to Jackson's cell and told Jackson, "That's for filing lawsuits against me and my co-workers…" (*Id.*, PageID.9.) Jackson alleges that Sgt. Pynnonen threatened him in several ways, including, "to stop filing grievances and lawsuits before you have an accidental

3

death." Jackson also asserts that Sgt. Pynnonen's threats deterred him from filing grievances and lawsuits against AMF employees. (*Id.*, PageID.10.)

### III.     Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[1]     If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d at 678. Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

### IV. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison

6

administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhaustion those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

8

rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### V. Analysis

Defendants assert that Jackson did not properly pursue any grievances against RUM Perttu or Sgt. Pynnonen through Step III of the MDOC's process during the relevant time period, and therefore failed to exhaust his retaliation claims against them. (ECF No. 40, PageID.137.) Jackson does not contest that he did not file grievances concerning the claims in his complaint. Instead, he says that he was

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

thwarted from using the grievance process.³ (ECF No. 42, PageID.168-169.) In response, Defendants argue that Jackson's allegations are insufficient to create a genuine issue of fact as to whether they thwarted his efforts to exhaust. (ECF No. 48, PageID.289.) Defendants point to Jackson's Grievance Summary Report ("Summary Report") from October 28, 2021 as evidence that his administrative remedies were available. (ECF No. 48, PageID.290-291.) The relevant portion of the Summary Report is shown below:

| Grievance | Number | Name | Facility | Issue | I Recd | I Dec | II Recd | II Dec | III Recd | III Dec |
|---|---|---|---|---|---|---|---|---|---|---|
| 20201529 | 748757 | JACKSON | AMF | 28F | 9/10/2020 | x | 10/7/2020 | x | 1/5/2021 | x |
| 20201531 | 748757 | JACKSON | AMF | 28F | 9/10/2020 | x | 10/7/2020 | x | 1/5/2021 | x |
| 20201661 | 748757 | JACKSON | AMF | 28F | 10/2/2020 | x | 10/16/2020 | x | 2/8/2021 | x |
| 20201664 | 748757 | JACKSON | AMF | 28F | 10/2/2020 | x | 10/16/2020 | x | 2/8/2021 | x |
| 20201702 | 748757 | JACKSON | AMF | 28F | 10/8/2020 | x | 10/16/2020 | x | 2/8/2021 | x |
| 20201734 | 748757 | JACKSON | AMF | 28F | 10/14/2020 | x | 10/30/2020 | x | 2/23/2021 | x |
| 20201735 | 748757 | JACKSON | AMF | 28F | 10/14/2020 | x | 10/30/2020 | x | 2/23/2021 | x |
| 20201736 | 748757 | JACKSON | AMF | 28F | 10/14/2020 | x | 10/30/2020 | x | 2/23/2021 | x |
| 20201748 | 748757 | JACKSON | AMF | 28F | 10/16/2020 | x | 10/30/2020 | x | 2/23/2021 | x |
| 20201760 | 748757 | JACKSON | AMF | 28F | 10/21/2020 | x | 11/5/2020 | x | 3/3/2021 | x |
| 20201804 | 748757 | JACKSON | AMF | 28F | 10/27/2020 | x | 11/10/2020 | x | 3/3/2021 | x |
| 20201813 | 748757 | JACKSON | AMF | 28F | 10/28/2020 | x | 11/10/2020 | x | 3/3/2021 | x |
| 20201836 | 748757 | JACKSON | AMF | 28F | 11/5/2020 | x | 11/23/2020 | x | 3/18/2021 | x |
| 20201837 | 748757 | JACKSON | AMF | 28F | 11/5/2020 | x | 11/23/2020 | x | 3/18/2021 | x |
| 20201925 | 748757 | JACKSON | AMF | 28F | 11/19/2020 | x | 12/15/2020 | x | 4/7/2021 | x |
| 20201979 | 748757 | JACKSON | AMF | 28F | 12/2/2020 | x | 12/22/2020 | X | 4/5/2021 | x |
| 20210365 | 748757 | JACKSON | AMF | 26I | 3/11/2021 | d | 4/7/2021 | d | 7/23/2021 | d |
| 20210366 | 748757 | JACKSON | AMF | 14A | 3/11/2021 | d | 4/13/2021 | d | 8/3/2021 | d |
| 20210367 | 748757 | JACKSON | AMF | 14F | 3/11/2021 | d | 4/13/2021 | d | 8/3/2021 | d |
| 20210378 | 748757 | JACKSON | AMF | 26A | 3/11/2021 | d | 4/7/2021 | d | 8/3/2021 | d |

---

³ Jackson also argues that the exhaustion of administrative remedies requirement may be excused by the Court because his interest in immediate judicial review outweighs the government's interests in efficiency and administrative autonomy as set forth by *McCarthy v. Madigan*, 503 U.S. 140 (1992). (ECF No. 42, PageID.167) However, the passage of the Prisoner Litigation Reform Act in 1995, 42 U.S.C. 1997e(a), which applied the exhaustion requirement to all prisoner claims "under section 1983 or any other federal law," was found to effectively overrule McCarthy. *Porter*, 534 U.S. at 524 (dictum); *Lavista v. Beeler*, 195 F.3d 254, 256 (6th Cir. 1999). Thus, Jackson's exhaustion requirement is not excused on these grounds.

(ECF No. 48-3, PageID.315.)

As an initial matter, the undersigned notes that the circumstances of this case present a close call. As indicated by Defendants, the Summary Report shows that Jackson appealed several grievances during the time that Defendants were allegedly threatening and retaliating against him, suggesting that the grievance process was available to Jackson at the time. However, Jackson alleges that RUM Perttu refused to receive Jackson's legal mail and threatened him regarding filing grievances or lawsuits on January 15, 2021. (ECF No. 1, PageID.5.) On the same day, Jackson alleges that his legal papers were compromised as a form of retaliation and to prevent Jackson from filing claims. (*Id.*, PageID.6.) Then, Jackson alleges that on February 8, 2021, Sgt. Pynnonen conducted a search of Jackson's cell which also compromised his legal papers. (*Id.*, PageID.7.) Sgt. Pynnonen also allegedly threatened Jackson regarding lawsuits. (*Id.*, PageID.9.) And while Jackson may have appealed pre-existing grievances around this time, the Summary Report reflects that Jackson did not file any *new* grievances. Instead, The Summary Report shows that the first Step I grievance filed after January 15, 2021 (**AMF-21-03-0365-26I**) was received on March 11, 2021, nearly two months after the events and well beyond the time-period provided for filing a grievance by 03.02.130 ¶¶ Q, W. (ECF No. 48-2, PageID.315.) In other words, the Summary Report casts doubt on, but is not per se inconsistent with, Jackson's allegations of thwarting; there exists a genuine issue of material fact. The undersigned recognizes that there may be other circumstances which undermine Jackson's thwarting allegations. For example, it is possible that Jackson had

11

opportunities to file grievances when neither RUM Perttu nor Sgt. Pynnonen were on duty.  However, Defendants do not set forth evidence of such circumstances, let alone assert that they exist.[4]

Accordingly, the undersigned concludes (1) that there is a genuine issue of fact as to whether Jackson was thwarted from being able to properly exhaust his claims, and (2) that the exhaustion issue in this case is appropriate for resolution at an evidentiary hearing conducted pursuant to this Court's authority under *Lee v. Willey*.[5]

---

[4]     Instead, Defendants ask the Court to "take judicial notice, under Fed. R. Evid. 201(b)(2), of the proceedings and arguments made by the defendants" in *Jackson v. Pynnonen*, W.D. Mich. Case No. 2:20-cv-170.  But the proceedings and arguments made by a party in another case are not the kind of facts that a Court may judicially notice. Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")  And to the extent that Defendants intend to argue that decisions made in *Jackson v. Pynnonen* have a preclusive effect on issues in this case, Defendants have not established the requirements of collateral estoppel.  *See NAACP, Detroit Branch v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987) ("Before collateral estoppel may be applied to bar litigation of an issue, four specific requirements must be met: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.").

[5]     Jackson argues that Defendants have forfeited their right to request a bench trial on the issue of exhaustion by not requesting it. (ECF No. 42, PageID.166.) This claim has no basis in the law and is still available to Defendants. *Lee v. Willey*, 789 F.3d at 678.

## VI. Recommendation

The undersigned respectfully recommends that the Court deny Defendants' motion for partial summary judgment for failure to exhaust. (ECF No. 40.)  If the Court accepts this recommendation, all of Jackson's claims will remain.  The issue can be resolved in a bench trial or evidentiary hearing.  *Lee v. Willey*, 789 F.3d at 678.


Dated:  July 19, 2022                                           /s/ *Maarten Vermaat*
                                                                                MAARTEN VERMAAT
                                                                                U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).